**SIGNED THIS: October 01, 2007**

_____
                    THOMAS L. PERKINS
        UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | ) |
| | ) |
| KENNETH E. ERWIN and | )   No.  07-80143 |
| MELISSA A. ERWIN, | ) |
| | ) |
| Debtors. | ) |

### O P I N I O N

This matter is before the Court for confirmation of the Amended Chapter 13 Plan filed by the Debtors, Kenneth E. Erwin and Melissa A. Erwin (DEBTORS).  A secured creditor, Americredit Financial Services, Inc. (AFS), objects on the basis that the Amended Plan fails to provide for its secured claim to be paid in equal monthly payments.  This Court determines that the equal payment provision, directed at debtors and not Chapter 13 trustees, does not require a trustee's monthly payments to secured creditors to be perfectly equal in amount.  Trustees may continue to pay debtors' attorney fees on an accelerated basis despite the resulting increase in secured creditor payments once the attorney is fully paid.  For the reasons set forth herein, the Objection will be denied and the Amended Plan will be confirmed.

The DEBTORS filed their Chapter 13 petition on January 26, 2007. Under the Amended Plan, the DEBTORS are to pay the Chapter 13 Trustee (TRUSTEE) $875.00 per month for sixty months for total payments of $52,500.00. Importantly, the DEBTORS proposed payments to the TRUSTEE are level for the entire term of the Amended Plan.

The Amended Plan calls for the TRUSTEE to pay two secured claims, one to National City Mortgage (NCM) in the amount of $18,999.93 to cure a prepetition arrearage on the DEBTORS' home mortgage, and the second to AFS secured by a 2005 Chevrolet Venture in the amount of $19,382.00 to be paid, with interest at 10.25%, "in prorata payments set forth by the Trustee." Subsequent to the filing of the Amended Plan, the DEBTORS and AFS stipulated that the correct amount of AFS's secured claim is $19,316.26 and that the rate of interest to be paid on the claim is 11.25%. The Amended Plan also provides that the TRUSTEE'S fee and the DEBTORS' attorney fees of $2,484.00 are to be paid by the TRUSTEE. After those claims are paid, the remaining plan payments are to be disbursed to the holders of allowed unsecured claims on a prorata basis, with an estimated dividend of 1%.

AFS objects to confirmation of the Amended Plan claiming that it cannot be confirmed because it violates Section 1325(a)(5)(B)(iii) (referred to as the "equal payment provision"), a recently enacted change to the Bankruptcy Code. Added by BAPCPA,[1] and effective October 17, 2005, the provision in question is as follows:

> (a) Except as provided in subsection (b), the court shall confirm a plan if –
> \* \* \*
>     (5)  with respect to each allowed secured claim provided for by the plan –

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

2

> \* \* \*
>
> > (B)(iii)  if –
> >
> > > (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> > >
> > > (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan.

11 U.S.C. § 1325(a)(5)(B)(iii).[2] The new provision, argues AFS, requires the Amended Plan to state an exact monthly payment amount to be paid to AFS and requires all payments that the TRUSTEE makes to AFS to be in that amount. The effect of this provision, contends AFS, is to render obsolete the prevailing practice in this District of prorata payments to secured and priority creditors.

Initially, AFS also objected on the basis that it was entitled to be paid interest on its secured claim at its contract rate of 21.95% and that the Amended Plan was not proposed in good faith. These objections have since been resolved by the stipulation between the DEBTORS and AFS. It should also be noted that AFS is receiving preconfirmation monthly adequate protection payments from the TRUSTEE as required by Section 1326(a)(1)(C). AFS does not contend that the amount of the payments it is now receiving or the amount that it is scheduled to receive under the Amended Plan is less than required to adequately protect its interest as required by Section 1325(a)(5)(B)(iii)(II) and Section 1326(a)(1)(C) .

---

[2]The Court recognizes that an alternative basis exists for denying AFS's objection in that Seventh Circuit case law supports the view that the provisions of Section 1325(a) are not mandatory conditions that must be satisfied before a Chapter 13 plan may be confirmed. *In re Burgess,* 143 Fed.Appx. 692 (7th Cir. 2005); *Matter of Escobedo,* 28 F.3d 34, 35 (7th Cir. 1994). In this Court's view, however, the result is better justified on other grounds.

The DEBTORS take no position regarding the objection, viewing it as primarily impacting the TRUSTEE'S administration of the Amended Plan.

The TRUSTEE contends that the equal payment provision has no effect on the prorata payment practice. Drawing a distinction between what a plan provides as drafted by a debtor and the practical reality of how payments are actually made by the trustee, the TRUSTEE argues that Section 1325(a)(5)(B)(iii)(I) does not require that each payment made to a secured creditor by a trustee under a confirmed Chapter 13 plan be exactly equal in amount. The TRUSTEE is troubled by the effect such a rule, if binding on him, would have on the payment of attorney fees and on the administration of cases generally.

Bankruptcy courts have addressed the equal payment provision with some consternation. A creative response to the equal payment conundrum was developed in *In re DeSardi,* 340 B.R. 790, 809-10 (Bankr.S.D.Tex. 2006), an opinion addressing the same issue in three different cases. Each debtor filed a plan proposing to retain a secured vehicle and began making preconfirmation adequate protection payments to the lienholder at the rate of 1.5% of the scheduled value of the vehicle, pursuant to a procedure established by local rule. Recognizing that payment in full of the debtor's attorney fees, ordered by local rule to be paid on an accelerated basis, would occur a few months into the plan and result in an increase in the monthly payment amount being paid to the secured creditor, causing the payments to become unequal, each debtor proposed a plan that deferred the commencement of the payments to the secured creditor until the attorney fees were fully paid. The creditors' plan payments were thus scheduled to begin in the sixth, fifth and seventh month of the plan, respectively, remaining equal in amount until the secured claim was

4

paid in full. The debtors asserted that Section 1325(a)(5)(B)(iii)(I) only requires that the payments be level once they begin and that commencement could be deferred to a month of the debtor's choosing so long as the creditor's interest remained adequately protected. The court agreed with the debtors and confirmed the plans. *Accord, In re Hill*, 2007 WL 499622 (Bankr.M.D.N.C. 2007). *Contra, In re Denton,* 370 B.R. 441 (Bankr.S.D.Ga. 2007).

Three other bankruptcy courts have addressed the equal payment provision in the context of a plan calling for a secured creditor to receive a large balloon payment at the end of the plan, determining with no difficulty that the proposed balloon payment violates the equal payment provision. *In re Schultz,* 363 B.R. 902 (Bankr.E.D.Wis. 2007); *In re Lemieux,* 347 B.R. 460 (Bankr.D.Mass. 2006)*; In re Wagner,* 342 B.R. 766 (Bankr.E.D.Tenn. 2006).

The results of these cases are readily explainable when the remedial purpose of the equal payment provision is considered. Prior to BAPCPA, it was not uncommon for some Chapter 13 plans to provide for backloaded payments, such as balloon payments. Another form of backloading involved graduated or step-up payment plans, where the payments started out smaller and increased over time. Secured creditors, particularly those secured by a vehicle, viewed this as unfair, exposing them to undue risk in light of the constant depreciation of their collateral.

Other plans, filed by debtors whose employment is seasonal, provided for reduced payments or no payments at all during certain months of the year, or called for payments to be made quarterly or semi-annually, rather than monthly, based upon the peculiarities of the debtor's income stream. Secured creditors had similar complaints with those plans.

In response to those creditor concerns, Congress enacted the equal payment provision and a companion provision extending the concept of adequate protection,

5

formerly a preconfirmation requirement, to postconfirmation plan payments. 11 U.S.C. § 1325(a)(5)(B)(iii)(II). The equal payment provision prevents debtors from backloading payments to secured creditors or paying them other than on a monthly basis. It is easy to understand why the courts in *Schultz, Lemieux,* and *Wagner* had little difficulty denying confirmation of plans that called for balloon payments to secured creditors — a plan proposal clearly intended to be eliminated by the equal payment provision. Likewise, it is easy to understand the struggle of the *DeSardi* and *Hill* courts, who were faced not with backloaded plans, but with plans that merely proposed to pay the debtors' attorney fees over a shorter term than the secured claims, something that has always been permitted and is supported by sound policy reasons. In this Court's view, the accelerated payment of debtors' attorney fees was not intended to be precluded by the equal payment provision and construing the provision as having that effect is incorrect.

The debtor's attorney fees, as well as the trustee's fee, accorded a special priority in Chapter 13 cases, must be paid "[b]efore or at the time of each payment to creditors under the plan." 11 U.S.C. § 1326(b). Payment of the fees on an accelerated basis is expressly authorized. This Court authorizes the Chapter 13 trustees to pay the debtor's attorney fees concurrently with creditors but on an accelerated, rather than prorated, basis. The attorney fees are usually paid in full within one year after filing.[3]

In addition to the express authorization for the accelerated payment of attorney fees, Chapter 13 trustees have independent authority and discretion to administer plans, subject to orders of the court and the rules imposed by the United States Trustee in its supervisory

---

[3]The Standing Order adopted by all of the bankruptcy judges in the Central District of Illinois provides that the monthly payments on attorney fees shall be the lesser of (i) 50% of the funds available for distribution or (ii) $250.

6

capacity over standing trustees. Chapter 13 trustees, simultaneously administering thousands of plans, determine the exact payment terms of each allowed claim.[4] With respect to secured claims, the trustee's responsibility is to pay the principal amount of the allowed claim plus interest, which is calculated and paid on a simple interest basis from payment to payment. *In re Pokrzywinski,* 311 B.R. 846 (Bankr.E.D.Wis. 2004). While the trustee is generally charged with distributing the funds received from the debtors as soon as is practicable and in accordance with the plan, 11 U.S.C. § 1326(a)(2), the exact amount and timing of each payment is determined by the trustee. The specific terms of a confirmed plan are binding on the debtor and each creditor, but not on the trustee. 11 U.S.C. § 1327 (a). Simply stated, neither the debtor nor any creditor has the right or power to dictate to the Chapter 13 trustee exactly how a claim is to be paid — the trustee determines those details.[5]

AFS suggests that the TRUSTEE is bound by the equal payment provision. This Court disagrees. The TRUSTEE'S argument that the equal payment provision is aimed at debtors, not trustees, is well-founded. Bankruptcy Code Sections 1322 and 1325 deal with the contents of plans, delineate the power to modify claims and the limitations on that power. These sections set the guidelines for what a debtor may or must do, and may not do, to get a plan confirmed. The directives pertaining to the trustee's administration of a confirmed plan are set forth in Section 1326. Those directives are few, indicating an intent to repose broad discretion in trustees for the administration of plans. Since the equal

---

[4] As of September 27, 2007, the TRUSTEE was appointed and serving in 2,147 pending Chapter 13 cases.

[5] In general, Chapter 13 trustees are not required to adhere to plan provisions that attempt to provide special treatment for a particular claimant, such as that payments will be made in certified funds or by express mail or on a particular day of each month. The trustees are not beholden to the whims of the parties.

payment provision was added to Section 1325, not Section 1326, the Court agrees with the TRUSTEE that it serves as a restriction on how debtors may propose payments, not as a directive as to how trustees must make payments.

The issue before the Court specifically concerns the payment of the DEBTORS' attorney fees. The Amended Plan does not propose for AFS to receive a balloon payment. Neither will the DEBTORS make graduated or step-up or non-monthly payments to the TRUSTEE. The DEBTORS will pay $875.00 each and every month for sixty months. Since the DEBTORS are making level payments for the entire term of the Amended Plan, and AFS will be paid prorata, the proposed treatment of AFS's claim is for payments that are equal in amount. While it is true that the amount of the monthly payment to AFS will increase once the DEBTORS' attorney fees are fully paid, that increase does not result from the terms of the Amended Plan. Rather, the increase results from the Court's Standing Order and the operation of Section 1326(b)(1). *See In re Balderas,* 328 B.R. 707, 719-20 (Bankr.W.D.Tex. 2005) (by imposing a kind of bankruptcy tax on creditor distributions for the payment of attorney fees, Section 1326(b)(1) trumps Section 1325(a)(5)).

AFS also contends that the DEBTORS are required to state in the Amended Plan the exact amount of the monthly payments that AFS will receive. The equal payment provision contains no such requirement. It is up to the TRUSTEE, not the DEBTORS and not AFS, to determine how much AFS will be paid each month.

The equal payment provision is a broad-stroke proscription against abusive payment terms, not a tool to micromanage Chapter 13 trustees. The Amended Plan provides that AFS will be paid a proportional share of the DEBTORS' payments which are

8

equal in amount for the entire sixty-month term of the plan.  Backloading of payments or other abusive payment terms are not present.  Therefore, the Amended Plan does not violate the equal payment provision.

AFS's objection to confirmation will be denied and the Amended Plan will be confirmed.  This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###